[Crim. No. 1496. Third Appellate District.—July 29, 1936.]

THE PEOPLE, Respondent, v. LAWRENCE WOOLEY, Appellant.

H. D. Gregory for Appellant.

U. S. Webb, Attorney-General, and Wilmer W. Morse, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendant was convicted of an offense specified in section 285 of the Penal Code. His motion for new trial having been denied, this appeal is prosecuted from the order denying the motion for new trial, and from the judgment following the verdict of conviction. The sufficiency of the evidence to sustain the verdict is not questioned. There is presented for our consideration certain alleged errors committed by the trial court hearing the action, and misconduct on the part of the district attorney, which we will consider in the following order:

At about 9:47 P. M., after the jury had been deliberating upon the case between four and five hours, the jury was brought into court and the following took place: "The Court: Mr. Weniger, I don't want you to tell me how the jury stands for one side or the other, but could you tell me what proportion are their votes? Don't tell me whether it is one side or the other. Foreman: I don't understand how you want me to state it. The Court: In taking the vote on two possible verdicts. Mr. Foreman: You mean guilty or not guilty? The Court: I don't want you to say how many for guilty, or how many for not guilty. I would like to know what proportion there are, whether fairly, evenly divided or not. Foreman: The proportion are for guilty. The Court: No, I don't want you to tell me that. It is so many for guilty, and so many for not guilty; there are so many on one side and so many on the other. What are the proportions? Foreman: Ten to two. The Court: Ten to two. I think under the circumstances the jury should stay over night and consider further, if you do not think you will reach a verdict this evening. Foreman: We were figuring on taking another vote right away; we might possibly do it. The Court: Suppose you take another vote and find out if you are still the same." The jury was then returned to the jury room for further deliberation, and in a short time returned with a verdict of guilty.

The contention of the appellant is that the foregoing constituted prejudicial misconduct on the part of the trial

court, and that the judge of the court gave the jury the impression that he favored conviction.

In the recent case of *People* v. *Von Badenthal,* 8 Cal. App. (2d) 404 [48 Pac. (2d) 82], it is held no error on the part of the court to ascertain how the jury may be numerically divided. Such information is a proper means of assisting the court in determining whether there is a reasonable probability of the jury agreeing upon a verdict, and the advisability of keeping them out for further deliberation. This question was before this court in the case of *People* v. *Talkington,* 8 Cal. App. (2d) 75 [47 Pac. (2d) 368]. In that case this court had occasion to review a large number of decisions having to do with inquiries made by the court, of jurors, as to how they were numerically divided. In the Talkington case this court used the following language: ''While a number of cases might be cited to the effect that reversible error was not committed when the trial court simply asked as to the numerical division of the jury, the great weight of authority is to the effect, however, that reversible error is committed if the trial court, in addition to asking the numerical division of the jury, also asks as to how they have voted with reference to the guilt or innocence of the defendant.'' (Citing *Brasfield* v. *United States,* 272 U. S. 448 [47 Sup. Ct. 135, 71 L. Ed. 345] ; *Burton* v. *United States,* 196 U. S. 283 [25 Sup. Ct. 243, 49 L. Ed. 482].) So long as the inquiry by the court is directed simply to the numerical division of the jury, no error is committed. The fact that the foreman of a jury may misapprehend the language of the court, may not be able to understand the English language sufficiently to give an answer as to the numerical division of the jury, and discloses that a majority of the jury may be either for or against conviction, no error is committed by the court. Jurors as a rule are not learned in the use of legal language, and often, when the trial judge inquires as to the numerical division, the thought comes to the juror that he should answer so many for conviction and so many for acquittal. That is the action of the juror or of the foreman of the jury, and is in no sense an influence exercised by the trial judge. In the instant case the language of the court appears to be absolutely unobjectionable. That the foreman of the jury did use language from which the court might conclude that a large proportion of the jury favored convic-

tion, does not constitute any prejudicial conduct on the part of the trial court, or reversible error.

In the case of *People* v. *Piscitella,* 90 Cal. App. 528 [266 Pac. 349], the foreman of the jury, in response to a question asked by the court, answered: "eleven to one for conviction". The jury was sent back for further deliberation, and it was held that the court had not committed any prejudicial error. So far as the record shows, no objection was interposed by appellant's counsel to any remarks on the part of the court. In the absence of an assignment of misconduct, or request for an admonition to disregard the remarks of the court, it is too late now to raise such an objection upon appeal. (*People* v. *Moreno,* 111 Cal. App. 52 [295 Pac. 50]; *People* v. *Weeks,* 104 Cal. App. 708 [286 Pac. 514]; 8 Cal. Jur. 510, sec. 522.) Even though the language of the court had been objected to, and further admonition to the jury requested, we do not find anything in the language of the court as set forth herein, prejudicial to the rights of the defendant.

No threat was made in this case, as in the Talkington case, that the jury would be kept out until they reached a verdict. ▉ The length of time that a jury should be held for deliberation is ordinarily a matter within the discretion of the trial court. Keeping a jury out for a reasonable length of time cannot be regarded as either improper or as an attempt to coerce a jury in reaching a verdict. (*People* v. *Selby,* 76 Cal. App. 715 [245 Pac. 792]; *People* v. *Lee,* 34 Cal. App. 702 [168 Pac. 694].) In the instant case the jury had not announced that they could not agree, and they had only been out for five hours, and were about to take another vote when called into the court room. Even in cases where the court has stated to the jury that they should stay out over night, it has been held that such a statement does not amount to coercion. (*People* v. *Roach,* 129 Cal. 33 [61 Pac. 574]; *People* v. *Marshall,* 99 Cal. App. 224 [278 Pac. 258]; *People* v. *Haacke,* 34 Cal. App. 516 [168 Pac. 382].) In this last case the court advised the jury that it would be present until shortly after 9:00 P. M., and if they had reached a verdict, would discharge the jury that night. Held, not coercion. This court in that case said it was not unusual for a court to tell a jury at what time of night he was going home, so that the jury might know when the court would be available, etc.

Appellant particularly objects to the following language addressed to the jury by the trial court: "Suppose you take another vote and find out if you are still the same." This language has been held unobjectionable. (*People* v. *Baker*, 94 Cal. App. 687 [271 Pac. 777]; *People* v. *D'A Philippo*, 220 Cal. 620 [32 Pac. (2d) 962].)

■ The next objection urged by the appellant is that the court erred in permitting the district attorney to reexamine certain witnesses after the People's case had been closed. The record shows that the appellant really reopened the case by calling a witness for further examination. The matter of allowing the reopening of a case for the taking of further testimony is committed to the discretion of the trial judge. The cases are so numerous in support of this rule that citation of authorities is unnecessary. In the event that the case is reopened for further testimony, the fact that some questions were asked which had previously been propounded does not constitute prejudicial error.

■ The alleged misconduct of the district attorney is directed to questions asked by him of the witness, Mrs. Wooley, as to why she left the state of California and went to the state of Arizona; and also, as to whether the witness and her husband had not quarreled over the conduct of the defendant in this case. It appears that Mrs. Wooley and her daughter (being the daughter with whom the defendant was charged with having committed the crime for which he was tried and found guilty), left the state of California and went to Arizona. In response to the questions of the district attorney, the witness stated the purposes for which she had gone to Arizona, and that while they left to get away from people, they were not influenced by anybody, and especially not by the appellant, to leave the state. Instead of setting out this examination, which would unnecessarily lengthen this opinion, we will simply state that a reading thereof shows absolutely no prejudicial error. Furthermore, as to the question of quarrels between Mrs. Wooley and her husband over the conduct of the defendant with their daughter, the transcript shows that no objections were interposed to the questions propounded by the prosecuting attorney, and therefore, it is too late upon appeal to allege any error in relation thereto.

■ It is further alleged that the district attorney was guilty of wilful misconduct in calling two witnesses in

rebuttal to testify concerning matters which should have been presented by the prosecution in its case in chief. This action is within the discretion of the trial court, and where no abuse of that discretion is disclosed, its ruling will not be disturbed upon appeal. (*People* v. *Allen,* 32 Cal. App. 110 [162 Pac. 401].) We find nothing in the transcript indicating an abuse of discretion on the part of the trial court in allowing said witnesses to be examined.

It is finally contended that the district attorney was guilty of misconduct in using the following language in his opening argument to the jury: ''but I do say that you, in your own mind, on this jury, will believe that that family feud was not anything but just what it appeared to be,— a father having immoral relations with his daughter. That is what that feud was about; and that is why that man is tried and brought here to this bar of justice today.'' The record shows testimony justifying the language of the district attorney. We quote therefrom as follows: ''I am going to ask you whether or not there was any difficulty of any kind whatsoever between your father and mother at a time just prior, I would say, within a week prior to this 7th of October? A. Yes, there was. Q. Do you remember the time? A. Well, I cannot remember what day it was, just what day. Q. How long before the 11th of October? A. Sometime between the 1st and 11th of October. Q. What was the trouble? Just tell the jury in your own words? A. Well, I could not say just what the trouble was. Part of it was because my father tried to mistreat my sister, Marjory.''

It is finally urged that the court erred in denying defendants' application for probation. The record shows that the defendant's application for probation was referred to the probation officer, who reported adversely thereon. Under such circumstances it would require a very strong showing of abuse on the part of the trial court to warrant any interference with its order denying an application for probation. We do not need to decide whether an appellate court possesses power to reverse an order of the trial court denying probation, for the simple reason that no showing is made in this case justifying an appellate court to interfere therewith.

Finding no prejudicial errors in the record, the order and judgment are affirmed.

Thompson, J., and Pullen, P. J., concurred.